Filed 1/3/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>E.P.,<br><br>　　Defendant and Appellant. | G054375<br><br>(Super. Ct. No. 16DL0229)<br><br>ORDER DENYING REHEARING AND MODIFYING OPINION; NO CHANGE IN JUDGMENT |

　　　　The opinion filed on December 11, 2018, is hereby modified as follows:

　　　　On page 6, delete the entire paragraph beginning with "Nor does section 459.5, subdivision (b) . . ."

　　　　The petitions for rehearing are DENIED. This modification does not change the judgment.

　　　　　　　　　　　　　　　　　　ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

Filed 12/11/18; On rehearing (unmodified version)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>E.P.,<br><br>    Defendant and Appellant. | G054375<br><br>(Super. Ct. No. 16DL0229)<br><br>O P I N I O N |


Appeal from a judgment of the Superior Court of Orange County, Lewis W. Clapp, Judge. Reversed in part and affirmed in part.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

The juvenile court found minor E.P. committed second degree burglary (Pen. Code, §§ 459, 460, subd. (b) [count 1]; all statutory references are to the Penal Code unless noted), possession of graffiti tools (§ 594.2, subd. (a) [count 2]), receiving stolen property (§ 496, subd. (a) [counts 4-6]), and illegal possession of an alcoholic beverage (Bus. & Prof. Code, § 25662, subd. (a) [count 7]). E.P. contends we must reverse the burglary finding (count 1) because the evidence was insufficient to show he committed burglary rather than the new crime defined by Proposition 47 as shoplifting. He further asserts we must reverse the findings he received stolen property (counts 4-6) because he cannot be charged or convicted of both shoplifting and receiving the same property. We conclude the evidence was insufficient to show that E.P. committed burglary and, therefore, reverse the true finding on the burglary count. Because E.P. was not charged with shoplifting, there was no bar to charging him with receiving stolen property (counts 4-6) and the court's true findings on those counts. Accordingly, we reverse the finding E.P. committed burglary, but affirm the findings he received stolen property and illegally possessed an alcoholic beverage.

I

FACTUAL AND PROCEDURAL BACKGROUND

Anaheim ICE is a public ice hockey facility with two professional-sized ice rinks and a shop. Between the ice rinks are offices, referee locker rooms, and locker rooms for the players, who must pay to use the rink.

On December 22, 2015, between 10:00 and 11:00 p.m., a hockey referee working a game spotted E.P. and a companion lingering around the locker rooms. The pair walked in and out of the locker rooms several times.

Three players reported items missing from the locker room. One player stated someone had stolen his keys, cell phone, and wallet from his jacket, which he had placed on a locker room bench. A second player reported his pants, wallet, keys, and phone were missing from the bag he left in the locker room. A third player stated

2

someone had taken his wallet, containing credit cards, an amusement park annual pass, and his cell phone from the pants he left on a locker room shelf.

Anaheim police officers responded promptly and detained three youths, including E.P., outside a closed fast food restaurant about a block and a half from the rink. E.P. consented to a search, and officers discovered the property stolen from the locker room.

Officer Olmedo arrested E.P., advised him of his *Miranda* rights and questioned him about the thefts. E.P. admitted possessing the spray paint can officers also found in his possession, explaining he was a tagger, but he initially denied involvement in the thefts. During a later conversation, E.P. admitted he went inside the facility to watch hockey with another "kid" he could not identify. This youth took "stuff" from the locker room and ran out the back of the facility. E.P. eventually admitted stealing a wallet, cell phones, a jersey, an alcohol bottle, and credit cards from the locker room.

At the close of evidence, E.P. moved to dismiss the burglary count under Welfare and Institutions Code, section 701.1, arguing that the prosecution failed to prove he had not committed shoplifting as defined in section 459.5.[1] He argued the prosecution failed to present evidence (1) the value of the property taken or intended to be taken was more than $950; (2) the locker room was not part of a commercial establishment; or (3) that he entered the locker room during nonbusiness hours. E.P. also argued that the juvenile court must dismiss the receiving stolen property allegations (counts 4- 6)

---

[1]     Welfare and Institutions Code, section 701.1 provides that the juvenile court, "on motion of the minor or on its own motion, shall order that the petition be dismissed and that the minor be discharged from any detention or restriction therefore ordered, after the presentation of evidence on behalf of the petitioner has been closed, if the court, upon weighing the evidence then before it, finds that the minor is not a person described by Section 601 or 602."

3

because a person cannot be charged with shoplifting property and receiving the same stolen property under section 459.5. subdivision (b).

In August 2016, the juvenile court sustained the allegations of the petition. In rejecting E.P.'s motion to dismiss the burglary charge, the court concluded the ice rink's locker rooms were not part of the commercial establishment and the crime of shoplifting covered thefts from the business, not from private citizens. Consequently, the court found true the allegations in the petition against E.P., declared him a ward of the court, and placed him on probation.

Following E.P.'s timely appeal, we issued an opinion reversing the burglary and receiving stolen property findings. Subsequently, the Attorney General filed a Petition for Rehearing, which we granted.[2]

II

DISCUSSION

A. *The Prosecution's Burden of Proof on a Burglary Charge Following Proposition 47*

In November 2014, the electorate enacted Proposition 47, "the Safe Neighborhoods and Schools Act," which amended existing statutes to reduce penalties for certain theft and drug offenses, and added several new provisions. Per its preamble, the stated purpose was "'to ensure that prison spending is focused on violent and serious offenses'" and to "'[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession.'" (*People v. Romanowski* (2017) 2 Cal.5th

---

[2]    We also requested and received supplemental briefing on two issues: (1) "Assuming the elements of shoplifting (Pen. Code, § 459.5) are shown, may a court convict a defendant of the lesser-related offense of shoplifting when the defendant is charged only with burglary?"; and (2) "After defining the elements of shoplifting, Penal Code section 459.5, subdivision (a), provides: 'Any *other* entry into a commercial establishment with intent to commit larceny is burglary.' (Italics added.) Does this provision preclude a conclusion that a defendant who commits shoplifting also simultaneously commits burglary?"

4

903, 909.) "Proposition 47 directs that the 'act shall be broadly construed to accomplish its purposes.'" (*People v. Jimenez* (2018) 22 Cal.App.5th 1282, 1287.)

To accomplish its goal of requiring misdemeanors for nonserious, nonviolent crimes like petty theft, Proposition 47 created a new misdemeanor crime of "shoplifting," which covers conduct that previously would have been classified as a burglary. (*In re J.L.* (2015) 242 Cal.App.4th 1108, 1112. (*J.L.*).) Codified in section 459.5, this new crime is defined in subdivision (a) as follows: "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary." Subdivision (b) expressly limits the prosecutor's charging discretion: "Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

Although the Attorney General acknowledges a person cannot be charged with and convicted of burglary when he or she actually committed shoplifting, he argues that a person who commits shoplifting may simultaneously commit burglary. Section 459 provides that a "person who enters any . . . room, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." The Attorney General contends Proposition 47 "did not amend section 459's definition of burglary itself to add any additional elements." Consequently, to prove second degree burglary here, the Attorney General concludes the prosecution only needed to prove the elements of burglary under section 459. In other words, it did not have to disprove any elements unique to shoplifting, such as that "the intended theft be of property valued at more than $950." We disagree.

5

Contrary to the Attorney General's contention, section 459.5 did amend section 459, as it expressly defined the new crime of shoplifting "[n]otwithstanding section 459." The language of section 459.5 reflects the fact that the new crime of shoplifting consists of certain wrongful conduct which previously was second degree burglary. Stated differently, the "new crime of shoplifting . . . displaces the prior felony of second degree burglary." (*People v. Chen* (2016) 245 Cal.App.4th 322, 324.) Thus, under the facts of this case, E.P. could not simultaneously commit shoplifting and second degree burglary.[3]

A contrary interpretation would run afoul of the express language of section 459.5, subdivision (a). If shoplifting is coextensive with second degree burglary, there would be no need for section 459.5 to state that "[a]ny other entry into a commercial establishment with intent to commit larceny is burglary," as that provision would be superfluous and redundant. (See *Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 114 ["Wherever reasonable, interpretations which produce internal harmony, avoid redundancy, and accord significance to each word and phrase are preferred."].)

Nor does section 459.5, subdivision (b) – which provides that "No person who is charged with shoplifting may also be charged with burglary or theft of the same property" – support a contrary interpretation. According to the Attorney General, our interpretation of section 459.5, subdivision (a) as precluding a person from simultaneously committing burglary when he or she commits shoplifting renders the prohibition of alternate charging in section 459.5, subdivision (b) "entirely superfluous." He argues section 459.5, subdivision (b) makes sense *only* if "a person who commits

---

3    "A felony burglary charge could legitimately lie if there was proof of entry with intent to commit a nontheft felony or an intent to commit a theft of other property exceeding the shoplifting limit." (*People v. Gonzales* (2017) 2 Cal.5th 858, 877 (*Gonzales*).) The prosecution did not prove those facts occurred in this case.

shoplifting can *also* simultaneously commit burglary."  We disagree.  The Attorney General's argument presupposes that section 459.5, subdivision (b) applies only where a defendant commits a single criminal act.  However, section 459.5, subdivision (b) can apply where a defendant commits multiple criminal acts.  Consider the following hypothetical.  Before a store is open to the public for business, a store employee enters the salesroom to steal merchandise worth less than $950, but is thwarted by a watchful manager.  After the store opens, the manager is distracted by a customer and the employee enters the salesroom and successfully steals the property.  Because burglary does not require a successful taking, the employee's prior attempted theft before the store opened falls within the statutory definition of burglary.  (See *Gonzales*, *supra*, 2 Cal.5th at p. 872 ["burglary and shoplifting do not require any taking, merely an entry with the required intent"].)  The successful theft falls within the statutory definition of shoplifting.  However, if the employee is charged with shoplifting, he or she cannot be charged with burglary for the prior attempted theft of the same property under section 459.5.  Thus, section 459.5, subdivision (b) serves a purpose even if shoplifting and second degree burglary are not coextensive.

Because a person cannot commit burglary if he actually committed shoplifting, a prosecutor who wishes to convict a defendant of burglary must prove that the defendant did not commit shoplifting.  (See Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or *nonexistence* of which is essential to the claim for relief or defense that he is asserting." (Italics added.)]; Evid. Code, § 501 ["Insofar as any statute, except Section 522 [relating to insanity defense], assigns the burden of proof in a criminal action, such statute is subject to Penal Code Section 1096".]; § 1096 [the People have the burden of proving facts establishing a defendant's guilt beyond a reasonable doubt].)  Evidence the defendant committed shoplifting disproves the elements of the charged commercial burglary.  Under these circumstances, the court must instruct the jury the prosecution

7

must disprove the element(s) of shoplifting beyond a reasonable doubt to secure a burglary conviction. (Cf. *Mullaney v. Wilbur* (1975) 421 U.S. 684, 704 ["Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation"]; accord, *People v. Banks* (1976) 67 Cal.App.3d 379, 383-384.)

Proving that a crime is not shoplifting may be difficult in some circumstances, but such difficulty does not relieve the prosecution of its burden. Just as a factfinder must evaluate stolen property to determine whether a felony theft crime is reducible to a misdemeanor under Proposition 47, so must the prosecutor evaluate the targeted property to determine whether the crime of shoplifting occurred. (See *People v. Romanowski*, *supra*, 2 Cal.5th at pp. 914, 915 ["fact that stolen access card information is not sold legally does not relieve courts of . . . duty" "to identify how much stolen access card information would sell for."].) Moreover, due to the prohibition against alternate charging in section 459.5, subdivision (b), the prosecution must determine whether the evidence supports charging the crime of shoplifting or burglary. Here, in charging E.P. with burglary rather than shoplifting, the prosecution apparently had no difficulty in gathering the evidence to determine whether it could prove the elements of a burglary or whether it should charge E.P. with shoplifting. Thus, it would not be onerous for the prosecution to produce that same evidence at trial. In sum, here, the prosecution had the burden of proving beyond a reasonable doubt that E.P. did not commit shoplifting.[4]

B. *Insufficient Evidence Supports the Burglary Finding*

Here, the juvenile court denied E.P.'s motion to dismiss the burglary count on two grounds. First, the court ruled that shoplifting requires "stealing property from a

---

[4]    Our holding does not affect the burden of proof on a petition for resentencing of a burglary conviction to a shoplifting conviction under Proposition 47. The petitioner has the burden to demonstrate eligibility for resentencing relief. (*People v. Romanowski*, *supra*, 2 Cal.5th at p. 916; *People v. Sherow* (2015) 239 Cal.App.4th 875, 880.)

commercial establishment, not from private citizens." Second, it concluded that although the locker room was in a commercial establishment, the locker room was for the use of "private citizens" and therefore not part of the commercial establishment. E.P. contends the juvenile court erred when it found his theft of items taken from an open locker room inside a commercial hockey rink was a burglary and not shoplifting. Based on the reasoning in decisions issued after the court found E.P. committed a burglary, there was insufficient evidence to support the court's finding on the burglary count.

In determining whether the juvenile court erred, we accept the court's factual findings if supported by substantial evidence, but review de novo the court's legal conclusions (1) that stealing property from private citizens is not shoplifting and (2) that the ice rink's locker room was not part of a "commercial establishment" within the meaning of section 459.5. (*People v. Hallam* (2016) 3 Cal.App.5th 905, 912 (*Hallam*).)

Shoplifting is defined in section 459.5 "as entering an open commercial establishment during regular business hours with the intent to commit 'larceny' of property worth $950 or less." (*Gonzales*, *supra*, 2 Cal.5th at p. 862.) Section 459.5 does not distinguish between property belonging to a commercial establishment and property belonging to private citizens. The juvenile court's ruling that a person can commit shoplifting only if he or she intends to steal property from the commercial establishment erroneously adds an element not included within the statutory definition of shoplifting. Accordingly, the court erred in ruling that as a matter of law E.P.'s theft of property from private citizens could never be shoplifting. (See *id.* at p. 871 [as defined in section 459.5, shoplifting is a "term of art, which must be understood as it is defined, not in its colloquial sense."]; *People v. Bunyard* (2017) 9 Cal.App.5th 1237, 1245 [shoplifting as defined in section 459.5 not limited only to "theft of merchandise or goods displayed for sale"].)

Turning to the second basis for the juvenile court's denial of E.P.'s motion to dismiss, we conclude the ice rink's locker room was part of a commercial

establishment within the meaning of section 459.5. In *Hallam, supra,* 3 Cal.App.5th 905, the defendant entered a computer store during business hours and used the employee restroom with express permission. He then left the store, but reentered through the back door. He returned to the employee restroom and stole an air compressor worth $350. Observing that the employee restroom was not an area to which the public generally had access, the district attorney argued the defendant intended to steal an item that belonged to the store, but was not store merchandise.

*Hallam* rejected the Attorney General's argument a "room within the business where the buying and selling of goods or services does not occur" could not be part of the "commercial establishment." (*Hallam, supra,* 3 Cal.App.5th at p. 912.) "Turning to the words of the statute here, we find no indication that shoplifting can occur only in specific areas of a commercial establishment. Nor does there appear any requirement that the business's commercial activity must be taking place in the area from which the theft occurs in order to qualify the offense as shoplifting. The trial court thus added an element to the offense that is absent from the plain language of the statute itself when it determined that appellant's theft would qualify as shoplifting only if it occurred in an area of the commercial establishment open to the public where merchandise is sold. Based on its impermissible revision of the definition of shoplifting, the court concluded that the crime was burglary rather than shoplifting because appellant entered the store through the back and stole an item from the employee restroom rather than an area of the store that was 'open for business.'" (*Id.* at p. 912.)

*Hallam* distinguished *J.L.*, 242 Cal.App.4th 1108, which held entry into a public high school locker room to steal property did not qualify as shoplifting. *Hallam* stated, "*J.L.*, however, . . . applied its commonsense interpretation of 'commercial establishment' not to a single room or area within a commercial venue, but to an entire school facility, and concluded that '[a] public high school is not an establishment primarily engaged in the sale of goods and services; rather, it is an establishment

10

dedicated to the education of students.' [¶] In contrast to the public high school in *J.L.*, [the computer store] unquestionably qualifies as a 'commercial establishment' within the meaning of section 459.5, subdivision (a). We find nothing in *J.L.*'s discussion of schools to inform our decision as to whether shoplifting includes the entry into any area of a commercial establishment during business hours, whether open to the public or not, as long as the establishment as a whole is open for business." (*Hallam, supra,* 3 Cal.App.5th at pp. 912-913.)

Our Supreme Court's recent decision in *Gonzales*, *supra*, 2 Cal.5th 858, is instructive. There, the defendant pleaded guilty to second degree burglary after he forged his grandmother's signature on two of her checks, entered a bank, and cashed them for a total of $250. The defendant appealed the denial of his petition to redesignate his burglary conviction as misdemeanor shoplifting. The court concluded the shoplifting statute applied because the term "larceny" in section 459.5 encompassed the nonlarcenous offense of theft by false pretenses committed when the defendant entered the bank to pass a forged check. The court construed the term "larceny" to mean theft because section 484 expansively defines a general crime of "theft" to include elements of larceny, false pretenses, and embezzlement. Further, section 490a states that "'[w]herever *any law or statute of this state* refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word "theft" were substituted therefor.'" (*Id.* at p. 866.) Thus, the court held the term "larceny" in the shoplifting statute must be interpreted to encompass theft by larceny, false pretenses, or embezzlement, just as it does in the general burglary statute.

Resisting this conclusion, the Attorney General in *Gonzales* argued that "use of the term 'larceny' in section 459.5, coupled with labeling the offense 'shoplifting,' exhibited an intent by the electorate to limit that offense to the 'common understanding of shoplifting,' which she characterizes as taking goods from a store." (*Gonzales, supra,* 5 Cal.5th at pp. 868-869.) The court rejected the Attorney General's

11

argument because "the language of section 459.5 refers to the general burglary statute and imports the term 'larceny' [which] strongly suggests an intent that the term maintain its same meaning in both provisions, including application of section 490a." (*Id*. at p. 869.) The court also rejected the Attorney General's argument that the electorate intended to limit shoplifting to the theft of "tangible merchandise" because the shoplifting statute uses the term "property," rather than the more expansive phrase "money, labor, real or personal property" found in section 490.2.[5] (*Id.* at pp. 870-871.) The court explained "section 459.5 provides a specific definition of the term 'shoplifting.' In doing so, it creates a term of art, which must be understood as it is defined, not in its colloquial sense. Indeed, by defining shoplifting as an *entry* into a business with an intent to steal, rather than as the taking itself, section 459.5 already deviates from the colloquial *understanding* of that term." (*Id.* at pp. 870-871, second italics added.) The court also found no intent to use a narrower definition of the term "property" in the shoplifting statute than the definition of the same term in section 7, which defines property to include "both real and personal property." (*Ibid*.)

Pertinent here, the Attorney General in *Gonzales* argued "it would be absurd for the shoplifting statute to encompass any form of theft other than larceny *of openly displayed merchandise*," otherwise, section 459.5 "would require a person to be prosecuted for shoplifting even if he enters a commercial establishment to commit a theft from an area of the store closed to the public, "'like a back office *or a private locker*

---

[5]     Section 490.2, subdivision (a), provides: "(a) Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290."

12

*room . . . .'"* (*Gonzales, supra*, 2 Cal.5th at p. 873, italics added.)  The court observed this argument was "little more than a restatement of the rejected claim that the electorate intended to use 'shoplifting' in the colloquial sense."  (*Id*. at pp. 873-874.)  The court explained if the voters had intended to limit the shoplifting statute to retail merchandise, "it could have done so by using language similar to that in section 490.5."  (*Id*. at p. 874.)[6]

Here, the Attorney General relies on *People v. Garcia* (2016) 62 Cal.4th 1116 (*Garcia*) to support his argument shoplifting does not include an entry into an area of a commercial establishment closed to the public.

In *Garcia*, the defendant suffered two burglary convictions, one resulting from his entry into a store to commit robbery, followed by another when he entered the store's restroom to rape an employee.  The Supreme Court found insufficient evidence to support the second burglary conviction.  *Garcia* explained:  "Where a burglar enters a structure enumerated under section 459 with the requisite felonious intent, and then subsequently enters a room within that structure with such intent, the burglar may be

---

[6]    Section 490.5, subdivision (g)(1), provides, "As used in this section:  [¶]  (1) 'Merchandise' means any personal property, capable of manual delivery, displayed, held or offered for retail sale by a merchant.  [¶]  (2) 'Merchant' means an owner or operator, and the agent, consignee, employee, lessee, or officer of an owner or operator, of any premises used for the retail purchase or sale of any personal property capable of manual delivery.  [¶]  (3) 'Theater owner' means an owner or operator, and the agent, employee, consignee, lessee, or officer of an owner or operator, of any premises used for the exhibition or performance of motion pictures to the general public.  [¶]  (4) The terms 'book or other library materials' include any book, plate, picture, photograph, engraving, painting, drawing, map, newspaper, magazine, pamphlet, broadside, manuscript, document, letter, public record, microform, sound recording, audiovisual material in any format, magnetic or other tape, electronic data-processing record, artifact, or other documentary, written or printed material regardless of physical form or characteristics, or any part thereof, belonging to, on loan to, or otherwise in the custody of a library facility.  [¶]  (5) The term 'library facility' includes any public library; any library of an educational, historical or eleemosynary institution, organization or society; any museum; any repository of public records."

charged with multiple burglaries only if the subsequently entered room provides a separate and objectively reasonable expectation of protection from intrusion relative to the larger structure. Such a separate expectation of privacy and safety may exist where there is proof that the internal space is owned, leased, occupied, or otherwise possessed by a distinct entity; or that the room or space is secured against the rest of the space within the structure, making the room similar in nature to the stand-alone structures enumerated in section 459." (*Garcia, supra,* 62 Cal.4th at pp. 1119-1120.)

*Garcia* identified several characteristics that might indicate an interior room shares the enhanced expectation of privacy and security of a stand-alone structure, including a locked door and signs to prevent unauthorized access. (*Garcia, supra,* 62 Cal.4th at p. 1129.) Such features demonstrate "a separate and objectively reasonable expectation of protection from intrusion, distinct from that provided by the security of the overarching structure." (*Id*. at p. 1127.) The court concluded insufficient evidence supported a burglary of the bathroom because it offered only "a limited transitory source of privacy" based on the bathroom's location and the absence of evidence the bathroom was left locked to the public. (*Id*. at p. 1132.)

Assuming without deciding that *Garcia* applies in this context, no evidence showed the locker room was locked or other measures were taken to prevent unauthorized access, such as signs prohibiting access. The locker room was located between the ice rinks, presumably to allow customers easy access to and from the rinks. At most, the evidence shows no more than a "limited transitory sense of privacy." (*Garcia, supra,* 62 Cal.4th at p. 1132.)

*Garcia* aside, the Attorney General asserts the locker room was not part of the Anaheim ICE's commercial establishment. He argues *Hallam* was wrongly decided and notes the Supreme Court granted review in *People v. Colbert* (2016) 5 Cal.App.5th 385, review granted February 15, 2017, S238954, H042499, to decide the following issue: "Did defendant's entry into separate office areas of a commercial establishment

14

that were off-limits to the general public constitute an 'exit' from the 'commercial' part of the establishment that precluded reducing his conviction for second degree burglary to misdemeanor shoplifting under Penal Code section 459.5?" In *Colbert*, the evidence showed the defendant entered the private offices of a convenience store and a gas station to steal about $300 on each occasion. The appellate court affirmed the denial of the defendant's petition to designate his crimes as shoplifting. Regardless how the high court decides this issue, the evidence here shows the locker room was part of the commercial establishment.

Anaheim ICE's locker rooms were located between the ice rinks, facilitating player and referee access. No evidence showed management locked the locker rooms, displayed signs prohibiting entry, or took other steps to prevent public access by family, friends, or bystanders watching the skaters. To the contrary, the evidence establishes a public use. The players' use of the locker rooms shows Anaheim ICE offered this amenity to its customers, a feature presumably reflected in the fees the facility charged its customers. The evidence does not support the Attorney General's contention the locker room was not part of Anaheim ICE's commercial establishment.

Finally, we note our decision comports with the stated goals of Proposition 47, which declares the "act shall be broadly construed to accomplish its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, p. 74, § 15 (Voter Information Guide).) "One of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered more serious under the terms of the initiative." (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 992.) The Act "also expressly states an intent to '[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes.'" (*Gonzales, supra*, 2 Cal.5th at p. 870; see Voter Information Guide, text of Prop. 47, § 3, par. (3), p. 70.)

15

In addition, there is insufficient evidence in the record to sustain the court's denial of the motion to dismiss the burglary count on other grounds. As stated above, to obtain a burglary conviction, the prosecution had to prove that E.P.'s theft was not shoplifting. Aside from proving that the locker room was not part of a commercial establishment, the prosecution could have negated a finding of shoplifting by proving either that the stolen property was worth more than $950 or that E.P. did not enter the locker room when it was "open during regular business hours." (§ 459.5, subd. (a).) However, the prosecution produced no substantial evidence on either issue. While evidence was presented about the items that were taken, the value of the stolen items was not obvious and no valuation opinion was presented. The prosecution also did not present testimony about the regular business hours of Anaheim ICE. Thus, the prosecution failed to prove that E.P. did not commit shoplifting and therefore failed to prove he committed second degree burglary.

In sum, the juvenile court erred in denying E.P.'s motion to dismiss the burglary count either on the ground that stealing from private citizens is outside the statutory definition of shoplifting or on the ground that the locker room was not part of a commercial establishment. No other ground supports the court's denial. Accordingly, we reverse the juvenile court's order declaring E.P.'s offense a second degree burglary.

C.     *Receiving Stolen Property (Counts 4-6)*

E.P. argues "[b]ecause [he] committed an act of shoplifting, he cannot also be prosecuted for the crimes of receiving stolen property. One cannot be convicted of both stealing and receiving the same property." (See § 459.5, subd. (b) ["[a]ny act of shoplifting . . . shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property"]; § 496, subd. (a) [every person who conceals or withholds stolen property from the owner knowing the property is stolen commits a crime; a principal in the actual theft of the property may be convicted pursuant to this section but no person may be convicted both

16

pursuant to this section and of the theft of the same property]; *People v. Ceja* (2010) 49 Cal.4th 1, 3 [theft conviction operates as a bar to a receiving conviction].)  The Attorney General concedes that if E.P.'s offense was shoplifting, he cannot be prosecuted for receiving stolen property.  However, E.P. was not charged with shoplifting, and the juvenile court did not find that he committed shoplifting.  Our reversal of the court's finding on the burglary count is not a finding that E.P. actually committed shoplifting.  We merely concluded that the prosecution failed to prove beyond a reasonable doubt that the crime was not shoplifting.  Moreover, E.P. does not contend there was insufficient evidence to support the true findings on the counts of receiving stolen property.  Accordingly, we affirm the juvenile court's findings on counts 4, 5, and 6.

III

DISPOSITION

The judgment finding the minor committed burglary (count 1) is reversed. The judgment finding possession of graffiti tools (count 2), receipt stolen property (counts 4, 5, and 6) and possession of alcohol by a minor (count 7) is affirmed.


ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.


17